JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Faren Keene ("appellant") appeals from the June 16, 2003 bench trial sentencing him to probation. The trial court found appellant guilty of assault, a misdemeanor of the first degree. Appellant was sentenced to one-year probation along with restitution and court costs. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the trial court.
 I {¶ 2} On September 29, 2002, Forrest Henry Buck ("Buck") arrived at appellant's residence, located at 3419 West 97th
Street, Cleveland, Ohio. There is some dispute as to who, if anyone, contacted Buck and told him to come over.[1] David Allen Richards ("Richards") owns the house and the appellant resides there. The purpose of this visit was to discuss a $10 loan which Richards gave to Buck. In addition to the loan, Richards was holding Buck's state identification as collateral.[2]
 {¶ 3} Buck arrived at appellant's residence and the two started arguing over the loan.[3] In the interim, appellant's pit bull attacked Buck's dog and the two dogs had to be separated. Appellant told Buck to leave his property. Richards and Buck eventually got into an argument which resulted in physical violence. There is some dispute as to the exact details of the fight. However, during the fight, appellant hit Buck in the head with a ten pound tow-chain.[4] Eventually, another individual, co-defendant Paul Titschinger ("Titschinger"), joined in the fight and hit Buck several times with a baseball bat. The fighting ended when Buck eventually ran away from the property.[5] Because of the tow-chain beating, Buck received medical care to close a head wound resulting in 11 staples to his head.
 {¶ 4} On November 8, 2002, the grand jury indicted appellant and co-defendant Titschinger with one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.13(A). Appellant and Titschinger both pled not guilty at arraignment on November 25, 2002 and a bench trial was conducted on June 16, 2003 before the trial court. Appellant was found guilty of assault, a misdemeanor of the first degree; however, Titschinger was acquitted.[6]
 II {¶ 5} Appellant's sole assignment of error states: "The trial court erred in finding Mr. Keene guilty of assault as that finding is contrary to the manifest weight of the evidence."
 {¶ 6} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. With respect to sufficiency of the evidence, sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. State v. Thompkins (1997), 78 Ohio St.3d 380.
 {¶ 7} Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a thirteenth juror and disagrees with the fact finder's resolution of the conflicting testimony. Id.
 {¶ 8} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. State v. Issa (2001), 93 Ohio St.3d 49, 67; see, also, State v. Thompkins, Id.
 {¶ 9} The proper test to be used when addressing the issue of manifest weight of the evidence is set forth as follows:
{¶ 10} "Here, the test [for manifest weight] is much broader.The court, reviewing the entire record, weighs the evidence andall reasonable inferences, considers the credibility of thewitnesses and determines whether in resolving conflicts in theevidence, the [fact finder] clearly lost its way and created sucha manifest miscarriage of justice that the conviction must bereversed and a new trial ordered. * * *"
 {¶ 11} State v. Moore, Cuyahoga App. No. 81876, 2003-Ohio-3526, p. 8, quoting State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Tibbs v. Florida (1982),457 U.S. 31.
 {¶ 12} The weight of the evidence and credibility of the witnesses are primarily for the trier of fact. Moore at p. 8, citing State v. DeHass (1967), 10 Ohio St.2d 230. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. Moore at p. 8, citing Martin.
 {¶ 13} It is with the above standards in mind that we now address appellant's assignment of error. In the case at bar, there is nothing in the record to suggest that the trial court clearly lost its way and created such a miscarriage of justice as to require reversal of appellant's conviction. To the contrary, the evidence in the record demonstrates that appellant struck Buck in the head with a ten pound tow-chain.[7] According to the testimony, Buck was asked about the fight and stated that, after appellant went into the house, he came back outside with his hand behind his back. "Then he come back out [of the house] and he was pretty heated. Then he had his hand behind his back the whole time and for about a minute and a half we argued. All of a sudden, he flipped out and he cracked me in the head with a chain."[8] After being hit in the head with a tow-chain, Titschinger hit Buck with a baseball bat. When counsel asked Buck if Titschinger did anything at this time during the fight, he responded:
"Yeah. He come behind me and hit me in the back with the ballbat. And then I was on the ground and he was still hitting mewith it in the side of my arm. Scott [appellant] was hitting mewith the chain. And my buddy come running over, Eric Poindexter.He come running over there, and they went to go attack himbecause he was trying to stop them. And while they was going totry to attack him, I got up and ran across the street."[9]
 {¶ 14} Buck was injured severely enough to seek medical attention. Counsel asked Buck what type of treatment he received at the hospital and he responded, "I was treated for — I got 11 staples in my head."[10] Furthermore, Buck had to take pain medication and missed work due to the beating he received.
 {¶ 15} In addition to the testimony presented, the State of Ohio ("state") put several pictures demonstrating the extent of injuries into evidence.[11] Counsel asked Buck about the state's exhibits, starting with state's exhibit 1 at the trial.
"Q. Can you tell us about that picture specifically?
 That's where I got the 11 staples at. That's where I was hiton top of the head with the tow chain.
 What about the scratches on the side?
 That was just when I was on the ground and they was — youknow, they was on top of me.
 Showing you what I've just marked as State's Exhibit No. 2,tell us about this picture?
 That is where I was hit with the tow chain. You can see thechain links, the indentation of my skin.
 Show the judge.
 (Pause.)
 That imprint there is an imprint of the chain.
 Yes.
 So those aren't random bruises, correct?
 No. You can see the links in them.
 Okay. I'm showing you what I've just marked as State'sExhibits 3 and 4. Tell us about these two pictures?
 This is a bruising from a baseball bat on my arm. * * *"[12]
(Emphasis added.)
 {¶ 16} In addition to the evidence above, the state put certified medical records regarding the treatment Buck received into evidence.[13] In addition, like the trial court, we find the fact that appellant struck Buck three times, the second and third after Buck was on the ground, to be problematic and inconsistent.[14]
 {¶ 17} Based on the evidence presented at the trial court, as well as the lower court's complete and accurate review of that evidence, we find appellant's error to be without merit. Appellant's conviction for assault is not against the manifest weight of the evidence. Indeed, the manifest weight of the evidence supports appellant's conviction.
 {¶ 18} Appellant's assignment of error is overruled.
 {¶ 19} The judgment is affirmed.
Judgment affirmed.
Dyke, P.J., and McMonagle, J., concur.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Tr. at 6 states that appellant went over to Buck's house and asked him to come over. However, according to the appellee's brief, Buck was asked by Richards to come over to his house to discuss a loan.
[2] Tr. at 20-21.
[3] Tr. at 21, 63.
[4] Tr. at 24.
[5] Tr at 25, 26.
[6] In its brief, appellee erroneously stated that appellant was found guilty of felonious assault.
[7] Tr. at 24.
[8] Tr. at 24.
[9] Tr. at 26.
[10] Tr. at 27.
[11] Tr. at 28. Also see state's exhibit nos. 1-6, 8.
[12] Tr. at 29.
[13] The state's arguments were presented solely through its appellate brief. The state failed to appear at oral argument and failed to inform this court of its intent not to appear.
[14] Tr. at 184.